## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

MERI JO WEISE,

                Claimant,

vs.

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF
SOCIAL SECURITY,[1]

                Defendant.

No. 20-CV-67-LTS

**REPORT AND
RECOMMENDATION**

_____

     Meri Jo Weise ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed in part and reversed and remanded in part**.

## I.  BACKGROUND

     I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 15) and only summarize the pertinent facts here. Claimant was born December 19, 1966. (AR[2] at 154.) Claimant has at least a high school education[3] and is able to communicate in

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant in this suit.

[2] "AR" cites refer to pages in the Administrative Record.

[3] Claimant has an Associate Degree in nursing. (AR at 39.)

Case 1:20-cv-00067-LTS-MAR    Document 21    Filed 02/15/22    Page 1 of 49

English. (*Id.* at 20.) She allegedly became disabled due to degenerative disc disease and arthritis. (*Id.* at 178.) Claimant's onset of disability date was January 5, 2018. (*Id.* at 14.) Claimant filed her application for DIB on January 8, 2018. (*Id.*) Her claims were denied originally and on reconsideration. (*Id.* at 92-95, 185-89.) A video hearing was held on July 24, 2019, with Claimant and her attorney Hugh M. Field in Waterloo, Iowa and ALJ Kim Fields and vocational expert ("VE") Carma A. Mitchell in West Des Moines, Iowa. (*Id.* at 36-57.) Claimant and the VE testified. (*Id.* at 38-57.) The ALJ issued an unfavorable decision on August 13, 2019. (*Id.* at 14-22.)

Claimant requested review and the Appeals Council denied review on May 15, 2020. (*Id.* at 1-5.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On July 9, 2020, Claimant timely filed her complaint in this Court. (Doc. 4.) On June 15, 2021, briefing deadlines expired and the Honorable Leonard T. Strand referred the case to me for a Report and Recommendation.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

2

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing,
> pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing,
> and speaking; (3) understanding, carrying out, and remembering simple

instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's

4

RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.     *The ALJ'S Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset of disability date of January 5, 2018. (AR at 16.)

At step two, the ALJ found that Claimant suffered from the following severe impairments: fibromyalgia, eczema, and arthritis. (*Id.*)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations, either when considered singly or in combination. (*Id.* at 17.) The ALJ considered whether Claimant's fibromyalgia medically equaled a listing or medically equaled a listing in combination with at least one other medically-determinable impairment. (*Id.*) The ALJ evaluated Claimant's claims under listings 1.02 (major dysfunction of a joint) and 8.05 (dermatitis). (*Id.*)

At step four, the ALJ found that Claimant had the following RFC:

[T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can alternate sitting up to 45 minutes, stand up to 45 minutes, and no limit walking. She can be in a climate-controlled environment and can perform occasional fingering and handling.

(*Id.*) The ALJ also found that Claimant was unable to perform any of her past relevant work. (*Id.* at 20.) However, the ALJ found that Claimant had acquired work skills from past relevant work as a nurse. (*Id.*)

At step five, the ALJ found that "[c]onsidering [Claimant's] age, education, work experience, and residual functional capacity, [Claimant] has acquired work skills from

past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (*Id.*) Specifically, the ALJ found there were 200,000 nurse consultant jobs available to Claimant in the national economy. (*Id.* at 21.) In reaching her decision, the ALJ stated the following:

> The residual functional capacity contains a limitation (sit/stand option) not addressed in the DOT. While the vocational expert did not testify specifically about this limitation, she is a qualified rehabilitation counselor by virtue of her education and training (15E). This demonstrates significant experience observing and placing individuals in jobs and a full understanding of the information contained in the DOT. Therefore, the undersigned accepts the vocational expert's testimony based on her years of experience as a certified rehabilitation counselor when addressing this variance with the DOT. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

(*Id.* at 21.) Thus, the ALJ concluded Claimant had not been under a disability as defined in the Social Security Act from January 5, 2018 through the date of the decision. (*Id.*)

## B. *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522

6

(holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

### III.   DISCUSSION

Claimant alleges the ALJ committed reversible error by (A) failing to resolve a conflict between the *Dictionary of Occupational Titles* and the VE's testimony, resulting in an error under SSR 00-4p; (B) failing to provide good reasons for finding Claimant was not credibly reporting her limitations; (C) failing to provide a rationale for not including limitations found by the state agency reviewing physicians in the RFC; (D) failing to provide good reasons for finding the opinions of Claimant's primary care provider unpersuasive; and (E) failing to fully and fairly develop the record concerning Claimant's limitations. (Doc. 16 at 1.)

**A.    Whether the ALJ Failed to Resolve a Conflict Between the DOT and VE's Testimony, Resulting in an Error Under SSR 00-4p**

**1.    The Parties' Arguments**

Claimant argues that the ALJ did not resolve the apparent conflict between her RFC, which she contends limits her to "an 'alternate sitting up to 45 minutes, stand up to 45 minutes' limitation" and jobs at the sedentary work level, which 'involve[] sitting

most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.'" (Doc. 16 at 4 (quoting 1991 WL 688702).)

Claimant notes that the ALJ was apparently aware of the conflict with the DOT because the ALJ "took the erroneous approach of resolving the SSR 00-4p conflict" by including the explanation regarding the VE testimony and experience in the decision. (*Id.* at 5 (quoting AR at 21).) Claimant argues that the ALJ's approach is incorrect because SSR 00-4p conflicts cannot be "assumed away because of the [VE's] experience." (*Id.*) For support, Claimant quotes the following from *Thomas v. Berryhill*:

> . . . [W]e usually refer to the DOT's generic breadth to affirm that an ALJ permissibly viewed an expert's explanation as having eliminated the seeming conflict. We do not use it to deny that there ever was a conflict. The Commissioner invites us to hold nonetheless that an explanation was not necessary here since the ALJ could assume, based on the generic nature of the DOT, that such an explanation existed and the expert would have given it if asked. The Commissioner does not direct us to a published decision in which we have expressly held that, and we have found none. Such a holding, in any event, would be inconsistent with our longstanding precedent that an ALJ may not rely on unexplained expert testimony that someone with a particular RFC is qualified to do a job that the DOT describes as exceeding it.

881 F.3d 672, 678 (8th Cir. 2018). Claimant also cites *Stamper v. Colvin* for the proposition that the court may not give deference to an ALJ's decision to rely on VE testimony resolving a recognized conflict between the DOT and a sit/stand option that cannot be accommodated with normal breaks. 174 F. Supp. 3d 1058, 1065-66 (E.D. Mo. 2016) (gathering cases).

Lastly, Claimant notes that the ALJ failed to ask "the basic SSR 00-4p 'does your testimony possibly conflict with the DOT' question." (Doc. 16 at 6 (citing *Renfrow v. Astrue*, 496 F.3d 918, 920-21 (8th Cir. 2007) for the proposition that "failing to ask the

8

basic SSR 00-4p question concerning conflicts is harmless error unless there ends up being a conflict with the DOT and the vocational expert's testimony").) Therefore, Claimant asserts that because the ALJ failed to resolve the conflict between the DOT and the VE's testimony that she could perform a sedentary job "with a limitation of alternating sitting and standing every 45 minutes," the ALJ's step five denial of benefits was not supported by substantial evidence and remand is required to resolve the conflict. (*Id.* at 6-7.)

> The Commissioner responds that Claimant
>
> misconstrues the limitations the ALJ assessed in her RFC determination and corresponding hypothetical question to the vocational expert, which in turn leads Plaintiff to incorrectly believe the vocational expert's testimony conflicted with the [DOT's] definition of and requirements for sedentary work.

(Doc. 17 at 9.) The Commissioner contends that there was no conflict and that the limitations the ALJ assessed and the VE's testimony were consistent with the DOT. (*Id.*) The Commissioner explains the argument in the following way:

> The ALJ explicitly found that Plaintiff could perform only "sedentary work as defined in 20 CFR 404.1567(a)"—which clearly meant sitting most of the time (for about 6 hours per workday) and standing and walking only occasionally (about 2 hours per workday) (Tr. 17). She then added a requirement that Plaintiff be able to alternate sitting and standing after "*up to* 45 minutes"—not after *exactly* 45 minutes (Tr. 17) (emphasis added). In her corresponding hypothetical question to the vocational expert, the ALJ stated that the hypothetical individual "must alternate sitting after 45 minutes stand up to 45 minutes" (Tr. 54). Thus, the ALJ found only that in performing the 6 hours of sitting and 2 hours of standing or walking during an 8-hour workday, Plaintiff could not remain in a seated or standing position longer than 45 minutes at a time (Tr. 17, 54). In other words, if Plaintiff had been sitting for 45 minutes, she only needed to be able to stand for an indefinite time no longer than 45 minutes before she could resume sitting—which she could fully do within the DOT and regulatory definition of sedentary work.

> Plaintiff mistakenly asserts that the ALJ "apparently recognized" the alleged, but not existent "conflict" in her decision. Pl.'s Br. at 5. However, the ALJ only noted that the DOT does not address such sit/stand options and that it was therefore necessary to rely on the vocational expert's experience regarding this requirement (Tr. 21). The Commissioner understands that, by itself, the ALJ's use of the term "variance" could be confusing and misunderstood as suggesting "conflict" (Tr. 21). But taken within the context of the DOT not addressing sit/stand options at all (meaning there could be no conflict with the DOT on this issue), the ALJ's precise wording in her RFC determination and hypothetical question, and the ALJ's concluding statement in this paragraph of her decision that the vocational expert's testimony was "consistent" with the information in the DOT, it is clear that the ALJ's use of the term "variance" was intended to describe the vocational expert's testimony as supplementing and not conflicting with the information in the DOT (Tr. 17, 21, 54).

(*Id.* at 10-11.)

Therefore, the Commissioner argues there was no conflict to be resolved and the evidence supports the ALJ's step five finding that Claimant could perform the job of nurse consultant. (*Id.* at 11-12.)

Claimant replies that the Commissioner is "spinning a tail with post hoc rationalizations to explain 'there was no conflict to be resolved,'" . . . . but "cannot explain away the SSR 00-4p conflict in this case." (Doc. 18 at 2.) Claimant states that by conceding a "'variance' with the 'sit/stand option' that had not been presented to the [VE] for resolution[, the ALJ] essentially concedes the point that if there was a conflict . . . it had not been resolved by the [VE]." (*Id.* at 3-4.) Claimant also notes that the Commissioner did not "confront" her citations to either *Haddock*, 196 F.3d 1084 or *Stamper*, 174 F. Supp. 3d 1058 and therefore "appears to concede the general point that they were correctly decided." (*Id.* at 2.) According to Claimant, *Haddock* and *Stamper* "are all that is necessary to resolve this issue." (*Id.*)

Claimant asserts that the ALJ's use of "except" instead of "and" in the limitation "residual functional capacity to perform sedentary work . . . *except* she can alternate sitting up to 45 minutes, stand up to 45 minutes" shows that the normal sedentary RFC limitations with an assumption of being able to sit at least six hours did not apply to her. Claimant continues:

> Playing Defendant's own post hoc rationalization games, one can equally argue that the RFC limitation limits sitting to much less than 4 hours in an 8-hour workday. To get to 6 hours sitting and 2 hours standing with the RFC, the ALJ's RFC would have to allow on average sitting 45 minutes and standing 15 minutes at a time. Just flip those, and all of a sudden Ms. Wiese's RFC is limiting her to sitting 2 hours in a workday and standing 6 hours in a workday—if the ALJ's RFC allows for the Defendant's post hoc theory, it equally allows for Plaintiff's, as the ALJ used the same words of "up to 45 minutes" to describe the "sitting" and "stand" limitations. (TR 17). Put another way, under Defendant's theory the ALJ's RFC may imply that on some days Ms. Wiese will be much more limited in sitting to a degree she will not be able to even sit for 4 hours in a workday—one must recognize that if one is arguing on some days Ms. Wiese will be able to sit for at least 6 hours in an 8-hour workday. Defendant's attempt at muddying the waters for this SSR 00-4p issue only strengthens Plaintiff's SSR 00-4p argument.

(*Id.* at 2-3.)  In short, Claimant asserts here and elsewhere in her briefing that the RFC requires her to stand half of the work day at times (*Id.* at 4; Doc. 16 at 9), which is at odds with a sedentary RFC.

### 2. *Relevant Law*

VE testimony that conflicts with the DOT "does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform." *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) (addressing DOT) (quotation omitted); *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014).  "If there is an 'apparent unresolved conflict' between VE testimony and the DOT, the ALJ must 'elicit a reasonable explanation for the conflict'

and 'resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than on the DOT information.'" *Moore*, 769 F.3d at 989-90 (quoting SSR 00-4p, 2000 WL 1898704, at *2-4) (brackets in original).

> SSR 00-4p places an "affirmative responsibility" upon the ALJ to ask about potential conflicts and to explain the resolution of the conflict in his or her decision. SR 00-4p states:
>> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>> -Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>> -If the VE's . . . evidence appears to conflict with the DOT, the adjudicator *will obtain a reasonable explanation* for the apparent conflict.
> SR 00-4p. *Additionally*, SSR 00-4p requires the ALJ to "explain in the determination or decision how he or she resolved the conflict." *Id.* Thus, SSR 00-4p essentially creates a tripartite duty upon the ALJ to inquire, resolve, and explain any conflict between the DOT and testimony from a VE.

*Closson v. Astrue*, No. C 06-4095-MWB, 2008 WL 504013, at *9 (N.D. Iowa Feb. 21, 2008) (emphasis added). Thus, it is clear that an ALJ must resolve any apparent conflicts between a VE's testimony and the DOT before relying on the VE's testimony. *See Thomas*, 881 F.3d at 677-78. General instructions to the VE that testimony must comport with the DOT and its companion publication *Selected Characteristics of Occupations* ("SOC") and that the VE must explain any conflicts with the DOT and SOC are insufficient to satisfy the ALJ's burden under SSR 00-4p. *Moore*, 769 F.3d at 990 ("The ALJ is not absolved of this duty merely because the VE responds 'yes' when asked if her testimony is consistent with the DOT.") (citing *Kemp*, 743 F.3d at 633).

12

### 3.    Analysis

Claimant is correct that the ALJ failed to ask the VE if her testimony conflicted with the DOT.   Thus, the ALJ failed to perform the "inquire" or "resolve" steps required under SSR 00-4p.   Remand is therefore required if a conflict exists between the requirements of sedentary work and the RFC exception that Claimant can alternate sitting up to 45 minutes and standing up to 45 minutes.[4]  If no conflict exists, the failure to inquire and resolve potential conflicts was harmless error. *See Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) ("[T]he ALJ's error in failing to ask the vocational expert about possible conflicts between his testimony and the Dictionary of Occupational Titles was harmless, since no such conflict appears to exist.").

Although Claimant states that *Haddock* and *Stamper* are the only cases necessary to resolve the parties' dispute, I do not find *Haddock* particularly useful.   As Claimant notes, *Haddock* merely states that the ALJ has an obligation to "investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." 196 F.3d at 1091.  Nothing in the Commissioner's brief challenges this point of law.  *Stamper* requires more discussion.

In *Stamper*, the ALJ found that the claimant could perform sedentary jobs with additional exertional limitations including a sit/stand option every 30 minutes throughout the eight-hour workday.  174 F. Supp. 3d at 1065.  *Stamper* reasoned,

A sedentary job:

> is defined as one that involves sitting, [although] a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

---

[4] The parties do not argue about the "walking without limitation" limitation in the RFC.

> "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.

> Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P (S.S.A. July 2, 1996). Thus, a sit/stand requirement is almost certainly in conflict with the presumed requirement in a sedentary job that the laborer will be sitting for the vast majority of the workday, and may not have the option to sit or stand at leisure.

*Id.* (brackets in original). *Stamper* held there was a "defacto conflict" between sedentary jobs where the person would be sitting "for the duration, or near-duration, of the workday," and the DOT job descriptions for the jobs relied on by the ALJ and that the VE did not resolve that conflict in her interrogatory answers. *Id.* at 1066 (distinguishing precedent cases). Therefore, the case was remanded to determine if jobs existed in economy that the claimant was capable of performing. *Id.* at 1067. *Stamper*, however, cannot be read to stand for the proposition that a sit/stand option is always in conflict with a sedentary RFC. *See Henderson v. Barnhart*, 202 F. App'x 147, 148 (8th Cir. 2006) (sedentary RFC with sit/stand option affirmed); *Wilkerson v. Apfel*, 230 F.3d 1365 at *1-2 (8th Cir. 2000) (unpublished table decision) (same).

> SSR 96-9p states

> The extent of the erosion [of the occupational base for a full range of unskilled sedentary work] will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

1996 WL 374185, at *7.

14

The Commissioner and the ALJ are correct that the DOT does not address sit/stand options. *Slavicek v. Astrue*, No. CIV. 09-2432 JNE/FLN, 2010 WL 5421444, at *21 (D. Minn. Dec. 2, 2010) ("The VE's testimony does not conflict with the DOT, the DOT simply doesn't address the issue of a sit/stand option."), *R. & R. adopted*, 2010 WL 5421341 (D. Minn. Dec. 23, 2010), *aff'd sub nom. Slavicek v. Colvin*, 527 F. App'x 590 (8th Cir. 2013). "The real issue is whether the Commissioner satisfied its burden at step five of the disability evaluation process." *Id.* This clarification does not render any of the parties' arguments moot, but merely focuses the following analysis.

Although the Commissioner's argument has some mathematical appeal, there is no testimony indicating whether nurse consultants "have the option to sit or stand at leisure." *Stamper*, 174 F. Supp. 3d at 1065. The VE testified that the nurse consultant job is "sedentary, skilled, with a [specific vocational preparation] of seven." (AR at 55.) The VE did not address how the sit/stand limitation would affect someone's ability to perform this job. (*Id.*) The VE testified about consultation tasks that nurse consultants perform but did not testify regarding sit/stand options or usual working conditions. (*Id.* at 56.) Although nurse consultants may well have the option to sit or stand at leisure, there is no evidence in the record supporting the assumption that the RFC could be satisfied while performing this work. "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE . . . may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p, 2000 WL 1898704, at *3.

The Eighth Circuit does "not believe that the generic character of the DOT's job descriptions can in and of itself resolve a discrepancy between a job's requirements as set forth in the DOT and a vocational expert's testimony that someone with a more limited RFC is qualified to do it." *Thomas*, 881 F.3d at 677. As Claimant noted, courts "usually

refer to the DOT's generic breadth to affirm that an ALJ permissibly viewed an expert's explanation as having eliminated the seeming conflict. [Courts] do not use it to deny that there ever was a conflict." *Id.* at 678. Here, although the Commissioner argues that the RFC contains the option to stand less than 45 minutes every 45 minutes, it also contains the possibility *to* stand 45 minutes every 45 minutes. Thus, in just six hours of an eight-hour day, Claimant *could* need to stand three hours (assuming Claimant stood for a full 45 minutes after sitting for 45 minutes for four sit/stand cycles). I, however, do not agree with Claimant that the RFC *requires* her to stand for half of the workday. The use of the words "she can alternate sitting up to 45 minutes, stand up to 45 minutes. . . ." indicate that the choice to switch positions is Claimant's.

Moreover, although the Commissioner is correct that the ALJ merely noted that the DOT does not address sit/stand options and therefore it was necessary to rely on a VE's testimony, I find the Commissioner's evaluation of the rest of the paragraph unpersuasive.

> The residual functional capacity contains a limitation (sit/stand option) not addressed in the DOT. While the vocational expert did not testify specifically about this limitation, she is a qualified rehabilitation counselor by virtue of her education and training (15E). This demonstrates significant experience observing and placing individuals in jobs and a full understanding of the information contained in the DOT. *Therefore, the undersigned accepts the vocational expert's testimony based on her years of experience as a certified rehabilitation counselor when addressing this variance with the DOT.* Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

(AR at 21 (emphasis added).)

The Commissioner asserts that, taken in context of the DOT not addressing sit/stand options, the ALJ's use of the word "variance" shows that the ALJ meant to use the word to describe the ALJ's testimony as "supplementing and not conflicting with the

information in the DOT." (Doc. 17 at 11.) Claimant argues that the ALJ was admitting there was a conflict with the DOT that required VE testimony to resolve. (Doc. 16 at 5.)

The Commissioner's argument is merely semantic. Certainly, an ALJ who acknowledges that the DOT does not address sit/stand options would be unlikely to find a "conflict" with the DOT based on a sit/stand option. However, the ALJ is clearly attempting to reconcile some kind of disconnect in this part of the decision. "Variance" means "[a] difference or disparity between two statements or documents that ought to agree." *Black's Law Dictionary* (11th ed. 2019). In non-legal usage, "variance" means "the fact or state of being in disagreement." *Merriam-Webster*, https://www.merriam-webster.com/dictionary/variance (last visited Jan. 25, 2022). By either definition, "variance" does not mean "supplement," which is "something that is added to something else in order to make it complete." *Id.*, https://www.merriam-webster.com/dictionary/Supplement (last visited Jan. 31, 2022).

In this case, the difference or disagreement is between the DOT's description of sedentary jobs and Claimant's RFC. Although the DOT does not address sit/stand options, a sit/stand option that requires a claimant to stand more than two hours in an eight-hour workday conflicts with the requirements of sedentary work. Without testimony from the VE explaining why this is not the situation in this case—not even the customary and cursory statement that her testimony is not in conflict with the DOT—I recommend that the District Court remand the case for the ALJ to determine if the job of nurse consultant or other jobs are available in the national economy that Claimant can perform.[5]

_____

[5] To that end, I agree with Claimant that the ALJ's decision included a post-hoc rationalization of her step five conclusion based on what the ALJ arguably thought the VE would have testified, if asked.

**B.**     *Whether the ALJ Failed to Provide Good Reasons for Finding Claimant was not Credibly Reporting her Limitations*

When a claimant suffers from a severe impairment, but the impairment does not meet or equal a disabling impairment listed in the regulations, the ALJ "will consider the impact of [the claimant's] impairment(s) and any related symptoms, including pain, on [the claimant's] residual functional capacity." 20 C.F.R. § 404.1529(d)(4). This determination involves a two-step process in which the ALJ first decides whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms and then evaluates the intensity and persistence of the claimant's symptoms. *Id.* § 404.1529(b),(c). When evaluating the claimant's subjective complaints during the second step, the ALJ considers the objective medical evidence, the claimant's work history, and evidence relating to the following factors ("the *Polaski* factors"): (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) the claimant's functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c)(3). An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)).

> Although "an ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them," the ALJ may find that these allegations are not credible "if there are inconsistencies in the evidence as a whole." [*Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)] (internal quotations and citations omitted). We will defer to the ALJ's credibility finding if the ALJ "explicitly discredits

a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (quotation and citation omitted).

*Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011).

After considering the factors and evidence, the ALJ determines the extent to which the claimant's symptoms affect the claimant's capacity to perform basic work activities. 20 C.F.R. § 404.1529(c)(4). The claimant's "symptoms, including pain, will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

### 1.    *The Parties' Arguments*

Claimant argues that the ALJ only addressed the objective medical evidence and "include[d] a minimal discussion of activities of daily living in the hearing decision." (Doc. 16 at 10.) Claimant asserts that the ALJ's error was not harmless because her "fibro fog" prevents her from doing the type of work the ALJ found she could do. Claimant urges the Court to apply the "harmless error reasoning" that *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) applied to treating physician opinions to the ALJ's "faulty credibility determination." (*Id.* at 11.)

The Commissioner responds that the Court should defer to the ALJ's credibility analysis because the ALJ gave good reasons for "explicitly discredit[ing]" Claimant's subjective complaints. (Doc. 14 at 24.) The Commissioner notes that the ALJ not only evaluated the objective medical evidence and Claimant's daily activities, but also that the ALJ discussed and considered Claimant's "routine and non-aggressive treatment" and the opinions of the state agency reviewing physicians who both noted the inconsistency between Claimant's subjective complaints and other evidence in the record. (*Id.* at 15 (citing AR at 64-45, 67, 77-78, 80 (opinions of state agency reviewing physicians noting

that Claimant "opted out" of suggested physical therapy, injections, and surgery for relief of neck pain stating that past physical therapy did not provide relief.) In addition, the Commissioner argues that Claimant's assertion that "the ALJ did not adequately consider her alleged 'fibro fog' and pain are unavailing." (*Id.*) The Commissioner states that the treatment notes of ARNP Katie Bries, Claimant's primary care provider, "consistently fail to document significant abnormal examination findings indicative of uncontrolled pain or 'fibro fog,' but instead consistently document that her condition was stable and that she experienced no significant side effects from her medication." (*Id.* (citing AR at 547-48, 550-52, 556-57, 558-60, 562-64, 570-71, 574, 576-77).) Lastly, the Commissioner points out that during the relevant time period, Ms. Bries's treatment notes state that Claimant's pain was well controlled (AR at 547, 550, 556, 558) and that Claimant twice reported "that she did not feel impaired or unable to work" (AR 556, 558). (*Id.*)

     *2.    Analysis*

     The ALJ addressed more than just the objective medical evidence and the Claimant's activities of daily living. The ALJ acknowledged that Claimant testified that her pain medication causes her drowsiness and dizziness. (AR at 18.) The ALJ also discussed Claimant's pain and tender points during the decision. Specifically, the ALJ noted that although some examination findings showed limited range of motion in Claimant's neck, back, and hands due to pain and stiffness and musculoskeletal tender points on examination, other examinations showed no neurologic deficits, full range of motion and strength in all extremities and full grip strength. (*Id.*) In fact, as will be discussed more fully in part III.C, *infra*, the ALJ found the state agency reviewing physicians' opinions "generally unpersuasive" because their findings were inconsistent with evidence showing that Claimant has a limited range of motion in her neck, back, and hands due to pain and stiffness. (*Id.* at 19.) Thus, the ALJ addressed those functional limitations in addition to the limitations Claimant testified to regarding lifting, walking,

sitting, and standing and explained how the limitations Claimant testified to and other evidence in the record affected the sitting, walking, standing, and fingering limitations in the RFC. (*Id.* at 18-19.) Although Claimant asserts that the ALJ failed to discuss how her limited activities impacted the credibility determination, the ALJ stated, "Although the claimant reported difficulties with handling and fingering, as well as with sitting, standing, and walking for extended periods (Hearing Testimony), her functioning in relation to her physical symptoms is not as limited as alleged." (AR at 19.) The ALJ then proceeded to explain how Claimant's activities of daily living, other abilities, and other evidence in the record supported the RFC. Therefore, this argument is without merit.

The Commissioner is largely correct that Ms. Bries's treatment notes "consistently fail to document significant abnormal examination findings indicative of uncontrolled pain or 'fibro fog,' but instead consistently document that her condition was stable and that she experienced no significant side effects from her medication," her pain was well controlled at times, and Claimant did not feel impaired at times (Doc. 17 at 15), although the story is a bit more nuanced than the Commissioner presents.

On January 10, 2018, Claimant's neck pain was stable but not at goal and she believed that working 10-12 hour shifts had caused the recent flair up of her pain. (AR at 576.) She had no side effects from her medications and had an appointment to see a neurosurgeon about her neck pain. (*Id.*) Claimant had an appropriate affect and her judgment and insight seemed intact. (*Id.* at 577.) Two months later, her neck symptoms were still stable but not at goal and Claimant described her pain as "constant." (*Id.* at 574.) She had limited range of motion ("ROM") in her neck do to pain. (*Id.*) Claimant also had painful movement of her hands and limited ROM due to pain flexion and extension of fingers. (*Id.*) Claimant had an appropriate affect and her judgment and insight seemed intact. (*Id.*) Ms. Bries noted that although Dr. Amit Singla, Claimant's

neurosurgeon, offered Claimant injections or surgical options to manage her neck pain, she declined to consider those options. (*Id.*)

In May 2018, Claimant's neck pain was stable with a limited ROM due to stiffness. (*Id.* at 570-71.) Claimant had an appropriate affect and her judgment and insight seemed intact. (*Id.* at 571.) In July 2018, her neck pain was stable, but not improving. (*Id.* at 561.) Ms. Bries noted that although it was recommended that Claimant have neck surgery, Claimant still "deferred" surgery and was using narcotic pain medication to moderate effect. (*Id.*)

By Claimant's well-adult examination on August 23, 2018, Ms. Bries stated that Claimant was "generally doing well." (*Id.* at 558.) Her pain was stable and well controlled and she had no significant medication side effects. (*Id.* at 558-59.) Ms. Bries noted that Claimant did not feel impaired, unable to work, or drive. (*Id.* at 558.) Claimant's neck was supple without masses. (*Id.* at 560.) Claimant's mood and affect were normal and appropriate, her mental status was clear, and she had no anxiety or depression. (*Id.* at 559-60.) In September 2018, Ms. Bries noted that Claimant's pain continued to be well controlled with no significant medication side effects. (*Id.* at 556.) Once again, she documented that Claimant did not feel impaired, unable to drive, or unable to work. (*Id.*) Claimant had no mental status changes. (*Id.* at 557.) In both December 2018 and March 2019, Ms. Bries stated that Claimant's pain was well controlled with no significant medication side effects and no mental status changes. (*Id.* at 547-48, 550-51.)

Thus, the Commissioner is correct that the record does not support a finding of fibro fog. Claimant cites no treatment notes that support a finding of fibro fog or any mental impairment that would prevent Claimant from performing the job of nurse consultant. To the extent Claimant asserts that her pain causes her mental confusion, something that is not at all clear, the record does not contain treatment notes documenting

22

uncontrolled pain or an inability to concentrate. Moreover, while Claimant has documented neck, back, and hand pain, medication relieves her symptoms and the RFC accommodates her impairments. *See Guilliams*, 393 F.3d at 801 (RFC is what a claimant can still do despite her limitations).

I recommend the District Court affirm the ALJ's decision on this issue.[6]

## C. *Whether the ALJ was Required to Provide a Rationale for not Including Limitations Found by the State Agency Reviewing Physicians in the RFC*

On February 16, 2018, state agency reviewing physician Matthew Byrnes, D.O., found Claimant capable of medium work with additional postural limitations, including only occasional stooping. (AR at 19, 66-67.) On reconsideration, Laura Griffith, D.O., found Claimant capable of light work with additional postural limitations, including only occasional stooping. (*Id.* at 19, 78-80.)

The ALJ found these opinions "generally unpersuasive," even though they cited objective medical evidence, because they were inconsistent with evidence showing Claimant has limited range of motion of the neck, back, and bilateral hands due to pain and stiffness and because Claimant's hearing testimony showed she was more limited than the reviewing physicians opined. (*Id.* at 19.)

### 1. *The Parties' Arguments*

Claimant argues that the ALJ erred by failing to limit Claimant's performance of stooping tasks in her RFC without explaining why. (Doc. 16 at 8.) Claimant notes that she had "confirmed central spinal stenosis with prominent spinal cord compression noted on an MRI and findings at multiple levels of her cervical spine" and that treatment notes and Claimant's submissions to SSA support some stooping limitations. (*Id.* (citing AR at 194, 201, 322, 348, 396, 425-26, 460, 517, 576).) Claimant also asserts the following:

_____

[6] Because I do not find that the ALJ committed any error, it is not necessary to discuss Claimant's *Lucus* argument.

The ALJ made a basic error that was discussed recently in *Gann v. Berryhill*. *See Gann v. Berryhill*, 864 F.3d 947, 952-53 (8th Cir. 2017). Like *Gann v. Berryhill*, Ms. Wiese's ALJ explained the RFC was more limiting than the agency medical consultants had found, which implies that the ALJ was at least accounting for the postural limitations the medical consultants had noted. (See TR 19). The hearing decision does not offer much explanation why no postural limitations were accounted for in Ms. Wiese's RFC. (See TR 17-20).

(*Id.*) Claimant admits that most sedentary jobs are not significantly reduced by an occasional stooping limitation (citing SSR 85-15), but argues that because the sit/stand limitation in this RFC requires her to stand half the day trying to do desk work, her RFC would necessarily "require some degree of stooping and would be expected to have a significant impact on the job numbers the [VE] identified at the hearing. (*Id.* at 9.) Therefore Claimant concludes that because the hypothetical did not include a stooping limitation, and the job the ALJ found Claimant could perform "would seem to involve stooping half the day," the ALJ's failure to account for the stooping limitation was harmful and the step five denial was not supported by substantial evidence. (*Id.*)

The Commissioner responds that although the ALJ was required to consider the opinions of the state agency physicians, she was not required to adopt them. (Doc. 17 at 13 (citing 20 C.F.R. § 404.1520b(c)(3)(v).) The Commissioner also notes while sedentary work is primarily performed in a sitting position and "entails no significant stooping," a limitation to occasional stooping is consistent with sedentary work. (*Id.* (citation omitted).) Therefore, the Commissioner argues that the ALJ's failure to expressly include a limitation to occasional stooping was "necessarily harmless," which the Commissioner asserts Claimant "acknowledges would be the case, but for her . . . mistaken belief that the ALJ's RFC determination and hypothetical question required her to stand half the day and thus stoop over her desk during that time." (*Id.*) The Commissioner contends that Claimant fails to show how the ALJ's failure to include a

stooping limitation was harmful, and therefore Claimant has not carried her burden to establish reversable error on this issue. (*Id.* at 9-10.)

### 2. *Analysis*

First, Claimant's cited evidence does not undermine the ALJ's decision. AR 194 is Claimant's Function Report stating that Claimant has limited ROM in her neck, that she no longer lifts weights at the gym, and must be careful changing squatting, bending, and reaching positions on gym equipment. AR 201 is a Third Party Function Report where Claimant's fiancée checked off activities that Claimant could not do for very long or at all due to pain, including bending. AR 322 and AR 576 are duplicates of the previously-discussed January 2018 treatment note stating that Claimant was experiencing an exacerbation of her neck pain from working 10-12 hour days and that she had limited ROM in her neck. AR 348 and AR 460 are Ms. Bries's March and October 2018 opinions, which are identical for all intents and purposes, and state that Claimant's neck pain limits her abilities to use a computer, focus, or continue with employment.[7] They also say that Claimant is unable to bend at the waist due to neck pain. AR 396-97, 425, and 517 document Claimant's limited range of motion in her cervical spine and the localized pain she experiences when she moves her neck. AR 397 also states that Claimant had tenderness at her cervical and lumbar segment and negative straight leg raise tests. AR 425 notes mild decreased ROM in the lumbar spine, no point tenderness, and local pain when Claimant bends backwards. AR 426 states that the physician ordered imaging studies to look for signs of carpal tunnel syndrome versus cervical radiculopathy from the disc at C5-6. AR 517 notes Claimant's December 2017 MRI results showed "spinal stenosis most prominently at C5-C6 level with a broad-based posterior disc

---

[7] As will be discussed in part III.D, *infra*, I do not find Ms. Bries's opinions supported either by her own treatment notes or the record as a whole.

protrusion and mild central canal narrowing at C4-C5 along with disc disease without significant narrowing at C2-2C3 and C6-C7."

The ALJ never stated that Claimant did not have neck or back limitations. In fact, as discussed above, the ALJ did not adopt the state reviewing physicians' opinions because Claimant's limited range of motion in her neck and back resulted in more limitations than the physicians acknowledged. None of the treatment notes Claimant cites state that Claimant presented in acute pain or that her ROM was limiting her activities except for the January 2018 treatment note where Claimant stated she was working 10-12 hour days at a job that is not appropriate for her current RFC.

Second, Claimant's reliance on *Gann v. Berryhill*, 864 F.3d 947 (8th Cir. 2017) is misplaced. In *Gann*, the VE's testimony did not support the ALJ's step five finding because although the ALJ assigned significant weight to the opinions of the state agency consultants, the ALJ did not include the consultants' adaptive limitations in the hypothetical presented to the VE. 864 F.3d at 953-54. In the case at bar, the ALJ found the state agency reviewers' opinions generally unpersuasive. (AR at 19.) Thus, the ALJ was not obligated to adopt limitations from their opinions into the RFC.

In spite of this, Claimant argues that the ALJ's adoption of a more limited RFC than the reviewing physicians assigned implies that the ALJ was at least accounting for the postural limitations the reviewing physicians had noted, limitations that cannot be satisfied when Claimant is required to stand half the work day and stoop over her desk. (Doc. 16 at 8-9.) Thus, Claimant makes a kind of "reverse-*Gann*" argument: that the ALJ should have adopted limitations from the opinions that were *more* limiting than limitations articulated in the RFC because the ALJ rejected the opinions for allowing Claimant to perform work that required higher strength ratings than the RFC's sedentary strength rating.

26

"Stooping" is "bending the body downward and forward by bending the spine at the waist." SSR 85-15, 1985 WL 56857, at *7. Sedentary work "entails no significant stooping." SSR 83-10, 1983 WL 31251, at *5. However, occasional stooping (up to one-third of the time) is required to do almost any kind of work and if a person can stoop occasionally, the sedentary occupational base is "virtually intact." SSR 85-15, 1985 WL 56857, at *7. Thus, to the extent Claimant asserts that she is limited to only occasional stooping, that limitation is in concert with the RFC limiting Claimant to sedentary work. Claimant admits as much in her brief. (Doc. 16 at 8 ("Most sedentary occupations are not significantly reduced by an occasional stooping limitation.") (citing SSR 85-5).)

As discussed above, although remand is required to obtain VE testimony about whether the job of nurse consultant can be performed with a sit/stand option that comports with the RFC, the ALJ nevertheless did not craft an RFC that required Claimant to stand for half of the working day as Claimant assumes. Accordingly, the RFC's limitation to sedentary work incorporated a limitation to occasional stooping and therefore it was harmless error at most for the ALJ to fail to specifically articulate the limitation.

I recommend the District Court affirm the ALJ's decision on this issue.

### D. Whether the ALJ Provided Sufficient Reasons for Finding the Opinions of Claimant's Primary Care Provider Unpersuasive

Katie Bries, APRN, is Claimant's primary care provider. On March 5, 2018, Ms. Bries completed a form called "Attending Physician's Statement—Progress Report" consisting of short answers and check-box answers ("the March opinion.") On October 12, 2018, Ms. Bries completed a form called "Attending Physician's Statement—Initial Report" consisting of short answers and check-box answers ("the October opinion"). (AR at 459-62.) Although the two opinions have different titles, the forms are identical. It is unclear whether pages AR 461-62 are part of the October opinion or constitute a separate opinion. AR 461 is called "Section B. Cognitive Impairment." Therefore, it

looks like the continuation of another form, but pages 459-60 do not contain "Section A." AR 461 has its own signature block and was also signed October 12, 2018. (*Id.* at 461.) AR 462 is called "Activities of Daily Living" and appears to have been completed by Ms. Bries, but does not contain a signature block and is therefore unsigned.

Claimant asserts that AR 461 and 462 constitute a separate opinion addressing Claimant's cognitive limitations. (Doc. 16 at 14.) The Commissioner does not acknowledge Claimant's "division of opinions" in this way, instead calling all of Ms. Bries's opinions "the opinion." (*E.g.*, Doc. 17 at 16.) When the Commissioner does address Ms. Bries's opinion regarding cognitive limitations, the Commissioner refers to it as "Ms. Bries's unqualified opinion." (*E.g.*, *id.* at 19.) This issue will be discussed more fully below. I will first address Ms. Bries's opinions regarding physical limitations.

### 1. *Ms. Bries's Opinions Regarding Physical Limitations*

Ms. Bries's March and October opinions regarding physical limitations are almost identical. In relevant part, Ms. Bries stated that Claimant's primary medical condition limiting her activity was chronic neck pain and her secondary condition was osteoarthritis in both hands. (AR at 347, 457.) Ms. Bries said that subjectively Claimant experienced pain with movement, flexion, extension, gripping, and typing. (*Id.*) Objectively, Claimant has limited grip strength due to pain, paresthesias,[8] and limited range of motion in her neck due to pain. (*Id.*) Ms. Bries noted December 15, 2017 MRI results showing cervical spondylosis with radiculopathy, central spinal stenosis, disc protrusion, and spinal cord progression. (*Id.*) She opined that Claimant could sit for one hour at a time with intermittent breaks for a total of three hours out of an eight-hour day, stand for one

---

[8] Paresthesia is "[a] spontaneous abnormal usually nonpainful sensation (*e.g.,* burning, pricking); may be due to lesions of both the central and peripheral nervous systems." *Stedman's Medical Dictionary* 653800, Westlaw (database updated Nov. 2014). The inclusion of paresthesias in the October 2018 opinion is one of the only differences between the March and October opinions.

28

hour at a time with intermittent breaks for a total of three hours out of an eight-hour day, and walk for one hour at a time with intermittent breaks for a total of three hours out of an eight-hour day. (*Id.* at 348, 460.) Ms. Bries stated that Claimant's "neck pain and stiffness decreases her ability to use computers, focus, or continue with employment." (*Id.*) She checked boxes limiting Claimant to occasionally performing fine manipulation such as fingering and keyboarding, gross manipulation such as gripping, grasping, and handling, and reaching above or below shoulder level with her right hand/arm. (*Id.*) In part, Ms. Bries also limited Claimant to never bending at the waist. (*Id.*) Ms. Bries supported the bending restriction in the March opinion by stating "chronic neck pain," but did not support the restriction in the October opinion. (*Id.*) Ms. Bries expected Claimant's restrictions to last for a year or to be permanent and Ms. Bries did not expect Claimant's condition to improve. (*Id.*)

The ALJ evaluated Ms. Bries's opinion in the following way:

> Treating provider, Katie Bries, ARNP, opined the claimant could perform a reduced range of sedentary work with additional postural and manipulative limitations (7F/7; 14F/3). This opinion is generally unpersuasive. The provider supports her opinion by reference to her findings of limited grip strength and decreased range of motion in the neck (*id.*), however, this opinion is poorly supported, as it is not clear, nor did the provider explain, how such findings support the extent of limitations in the opinion. Additionally, the opinion is inconsistent with the totality of the evidence, which shows normal mobility, motility, and other neurological signs (5F/4-6; 9F/5; 12F/1; 13F/7; 17F/3).

(AR 19-20.)

### a. *Legal Standard*

Claimant's claim was filed after March 27, 2017. Therefore, the rules articulated in 20 C.F.R. Sections 404.1520c(a) and 416.920c(a) apply to analysis of this opinion. Under these rules, no medical opinion is automatically given controlling weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Opinions from medical sources are evaluated

using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.* Supportability and consistency will be addressed below.

### b.     *Supportability*

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

### i.     *The Parties' Arguments*

Claimant asserts that the ALJ did not provide sufficient reasons for finding Ms. Bries's opinion not persuasive. (Doc. 16 at 15.) She argues that "[t]o the extent the ALJ is not sure how Ms. Bries' limitations opinions relate to her referencing limited grip strength and decreased range of motion in the [n]eck, the ALJ certainly could and should have clarified that issue with Ms. Bries." (Doc. 16 at 15 (citing *Snead v. Barnhart*, 360 F.3d 834, 839 (8th Cir. 2004).)

Claimant cites none of Ms. Bries's treatment notes to support her arguments. However, she cited two of Ms. Bries's treatment notes that documented "neck pain" and

"limited range of motion [in neck] due to pain and stiffness" in support of her arguments related to the persuasiveness the ALJ assigned to the state agency reviewing physicians' opinions. (*Id.* at 8 (citing, *inter alia*, AR at 322, 576).)

The Commissioner responds that the ALJ properly considered Ms. Bries's opinion when considering Claimant's RFC. (Doc. 17 at 16.) Specifically, the Commissioner argues that Ms. Bries's opinions regarding physical limitations "were not supported and were inconsistent with the other record evidence." (*Id.* (citations omitted).) The Commissioner avers that neither Ms. Bries's own treatment records nor the record as a whole support Ms. Bries's opinions. (*Id.* at 16-17.)

The Commissioner contends that Ms. Bries's treatment notes do not document significant abnormal examination findings that support Ms. Bries's limitations. (*Id.* at 17.) Specifically, the Commissioner argues that Ms. Bries's treatment notes "consistently document that Plaintiff's condition was stable and that she experienced no significant side effects from her medication [and] frequently document that Plaintiff's pain was well-controlled." (*Id.* (citing AR at 547-48, 550-52, 556-57, 558-60, 562-64, 570-71, 574, 576-77).) The Commissioner also points out that at least twice Claimant reported "that she did not feel impaired or unable to work." (*Id.* (citing AR 556, 558).)

The Commissioner further asserts that because Ms. Bries's treatment notes do not support the severity of physical limitations she assessed, Ms. Bries must have based her limitations on Claimant's subjective complaints, which the ALJ properly discredited.

### ii. Analysis

Ms. Bries supported her opinion by citing an MRI taken about three weeks before Claimant's alleged onset of disability date and noted that Claimant tried physical therapy, home exercises, heat, sauna, inversion table, and medication to alleviate her symptoms, but did not cite any of her own treatment notes to support her opinion. (AR at 347, 459.)

To support her argument, the Commissioner cites the same treatment notes cited in support of the credibility argument. And, as with the previous discussion, the treatment notes seem to "consistently document that Plaintiff's condition was stable and that she experienced no significant side effects from her medication [and] frequently document that Plaintiff's pain was well-controlled" (Doc. 17 at 17), especially, as discussed above, as time went on.

Of the above-mentioned pages that were cited in Claimant's brief, AR 372 and AR 576 are the same January 10, 2018 treatment note that was also cited by the Commissioner and was already discussed above. Therefore, Ms. Bries's treatment notes do not support her opinion. Moreover, Ms. Bries's statement that Claimant is unfit for employment is a decision reserved for the Commissioner. *See Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) (whether a claimant is disabled or unable to work are "issues reserved to the Commissioner") (quoting *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010)).

### iii. Conclusion

This factor supports the ALJ's conclusion that the opinion was unpersuasive. *See Toland v. Colvin*, 761 F.3d 931, 935-36 (8th Cir. 2014) (holding that a physician's own inconsistency may undermine his opinion when limitations are not reflected in his treatment notes or medical records).

### c. Consistency

"The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

### i. Analysis

Claimant argues that the treatment notes the ALJ cited to support her decision actually support the limitations in Ms. Bries's opinion. (Doc. 16 at 15.) According to

Claimant, the ALJ's decision was harmful because Ms. Bries's physical limitations were not included in the RFC and, if adopted, would have resulted in Claimant being declared unemployable. (*Id.* (citations omitted).)

The treatment notes Claimant relies on were cited by the ALJ to support her conclusion that Ms. Bries's opinion "is inconsistent with the totality of the evidence, which shows normal mobility, motility, and other neurologic signs." (AR at 20.) Although the treatment notes contain some information that supports Ms. Bries's opinion, on the whole, the treatment notes support the ALJ's decision. *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (noting that while it was not surprising that the administrative record contained evidence that detracted from the ALJ's decision, good reasons and substantial evidence on the record as a whole supported the Commissioner's RFC determination and the decision to discount physician's opinion).

AR 331-33 notes that Claimant presented to Dr. Singla complaining of back pain, neck pain, and neck stiffness and that her motor exam showed normal strength and sensation in all areas tested. AR 366 is a page of Claimant's new patient consult with Dr. Claro T. Palma. Dr. Palma noted, in pertinent part, that Claimant had cervical flexion of 45 degrees, extension of 30 degrees, rotation of 60 degrees left and right, and lateral bend 15 degrees left and right; there was tenderness at the cervical and lumbar segment, but no kyphosis, scoliosis, or tenderness at the sacroiliac joint. Claimant had negative straight leg raise tests at 45 degrees, limited ROM in her thumbs, and crepitus, swelling, and tenderness in some finger joints. AR 411 is a treatment note about a painful lump Claimant had on her left shoulder. Claimant had full ROM in that shoulder and 5/5 strength.[9] As previously discussed, AR 425 and 517 document Claimant's limited

_____

[9] This lump appears to have been an isolated condition that was determined to be arthritis. (AR at 413.) Claimant states that this page is irrelevant to her arguments before the ALJ and this court. (Doc. 16 at 15.)

range of motion in her cervical spine and the localized pain she experiences when she moves her neck. AR 396-97, 425, and 517 document Claimant's limited range of motion in her cervical and lumbar spine and the localized pain she experiences when she moves her neck and when she bends backwards from the waist.

While these treatment notes document some stiffness and pain with movement, they do not support a complete inability to work. Rather, they support an ability to perform limited range of sedentary work consistent with the ALJ's decision. *See Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

### ii. Conclusion

This factor supports finding the opinion unpersuasive.

### d. Conclusion

I recommend the District Court affirm the ALJ's decision on this issue.

### 2. Ms. Bries's Opinion Regarding Mental Limitations

#### a. Introduction

There appears to be some confusion regarding whether Ms. Bries filed a separate opinion regarding Claimant's mental limitations. Claimant asserts that AR 461-62 constitutes a separate opinion by Ms. Bries that addresses Claimant's cognitive limitations. (Doc. 16 at 14 (citing *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 553 (8th Cir. 2018).) The Commissioner admits that the ALJ did not address "the vague" cognitive limitations assigned by Ms. Bries, but argues that this omission was harmless error for several reasons. (Doc. 17 at 18-19.)

First, I find that this case can be distinguished from *Walker*. In *Walker*, the ALJ based his RFC on the opinion of a non-treating physician, rather than on the opinion of the claimant's treating physician. 911 F.3d at 554. *Walker* stated that while the ALJ had the right to do so, he had to explain why in his decision, especially because at the time,

a treating physician's opinion was entitled to controlling weight if it was well supported and not inconsistent with other evidence in the record as a whole. *Id.* Because the ALJ did not even mention the treating physician's opinion, remand was required to allow the ALJ to explain his reasoning. *Id.* Here, no physician's opinion is presumptively controlling. *See* 20 C.F.R. 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)"); 416.920c(a) (same). In addition, the ALJ in this case did not cite a specific opinion that "trumped" the other evidence in the record. Moreover, Ms. Bries's opinions related to physical restrictions that the ALJ did analyze stated that Claimant had no cognitive impairments. (AR 348, 460 (Ms. Bries checked "NO" box in response to the question, "Does the patient have a psychiatric/cognitive impairment?").) Finally, as discussed below, the evidence in the record does not support Ms. Bries's single comment regarding Claimant's mental impairments.

Second, my review of the administrative record leads to the conclusion that the ALJ did not clearly fail to analyze a separate opinion addressing Claimant's mental health issues. As noted above, AR 461 does not look like the beginning of a new document. The top of the page says, "SECTION B. Cognitive Impairment." This page was completed on the same date as the October opinion and looks like a continuation of that opinion. It looks nothing like the other two opinions. Another piece of evidence that leads me to believe that the ALJ did not miss a separate opinion devoted to Claimant's cognitive impairments is that, as mentioned above, on AR 460, which faces AR 461, Ms. Bries checked a box stating that Claimant had no psychiatric or cognitive impairment. Ms. Bries completed AR 460 and 461 on the same date. I therefore find that AR 461-62 are actually part of the October opinion and the ALJ did not fail to analyze a separate opinion addressing Claimant's mental impairments. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) ("[W]e must view the record in the light most favorable

35

to the [ALJ's] determination. . . . we must strive to harmonize statements where possible; we may neither pick nits nor accept an appellant's invitation to rely upon perceived inconsistencies.").

However, that does not end the inquiry because Ms. Bries still offered opinions related to Claimant's mental health that the ALJ did not address. Therefore, the ALJ at least failed to *fully* address Ms. Bries's October opinion. Accordingly, even if the District Court does not agree with my conclusion that AR 461-62 does not constitute a separate opinion, the following analysis will still be relevant. For ease of discussion, I will refer to the information on AR 461-62 as "the opinion."

### b.     *Ms. Bries's Mental Health Opinion*

Question 1 of the Cognitive Impairment Form asked, "Does the patient suffer from a loss of functioning in any of the items below to the extent that they are unable to perform common tasks, such as, but not limited to: medication management, money management, and using the telephone?"   (*Id.* at 461.)   Ms. Bries checked the "YES" boxes for "memory" and "ability to understand and reason." (*Id.*) Ms. Bries explained, "[Patient] experiences significant brain fog, trouble focusing, etc." (*Id.*)   On the next page, "Activities of Daily Living," Ms. Bries indicated that Claimant could perform all listed activities of daily living independently. (*Id.* at 462.) Therefore, Ms. Bries's entire mental health "opinion" is the statement that Claimant "experiences significant brain fog, trouble focusing, etc.," which causes problems with memory and the ability to understand or reason, but that brain fog has no effect on Claimant's abilities to bathe, dress, toilet, transfer from bed to a chair, maintain bladder and bowel control, maintain a reasonable level of hygiene, or feed herself. (*Id.* at 462-63.)

### c.     *Analysis*

The opinion will be analyzed both for harmless error and under the rules laid out in 20 C.F.R. 404.1520c(a) and 416.920c(a) discussed above.

### i.    *Supportability*

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

The Commissioner argues the following:

(1)    Because Ms. Bries specializes in family medicine, she is not qualified to provide a professional opinion regarding Claimant's mental health. (Doc. 17 at 18.)

(2)    Ms. Bries did not "deem [Claimant's] mental health issues significant enough to warrant a referral to a mental health specialist for evaluation and treatment." (*Id.*);

(3)    Because Ms. Bries merely checked two boxes and did not elaborate and "did not attempt to quantify the extent of the deficits, such as describing them as mild, moderate, or severe, but instead noted only that Plaintiff experienced 'significant brain fog, trouble focusing, etc.,' [the opinion] is not particularly helpful in that it cannot be translated into specific limitations in work-related mental activities." (*Id.*); and

(4)    Ms. Bries's own treatment notes do not support the opinion because they document normal mental status findings. (*Id.* at 19.)

I will address each of the Commissioner's arguments in turn and will incorporate Claimant's responses when responses were provided.

First, Ms. Bries is an advanced registered nurse practitioner, which means she is a "qualified medical source" who can provide medical opinions under the relevant regulations. 20 C.F.R. § 404.1502(a)(7); (Doc. 18 at 5 (Claimant's Reply Br.).) That Ms. Bries specializes in family medicine rather than mental health goes to the persuasiveness of her opinion, not to whether she is qualified to opine on Claimant's mental health in the first place. *See* 20 C.F.R. §§ 404.1520c(c) (noting that specialization

is one of the factors upon which the persuasiveness of medical opinions is based); 416.920c(c) (same).

Second, I am not certain that (2) is an argument. It appears to be more of a statement based on an assumption. Without evidence that it is Ms. Bries's normal practice or place within her practice group to do referrals, this statement is not damning. AR 366 and AR 331-33, which were discussed above, show that Claimant's referrals to Dr. Singla and Dr. Palma were requested by Dr. Matthew J. Kettman, who is listed on Dr. Singla's and Dr. Palma's treatment notes as Claimant's primary care provider. Thus, to the extent this statement is an argument, it is underdeveloped and without merit. *See Aulston v. Astrue*, 277 F. App'x 663, 664-65, 2008 WL 2066019 (8th Cir. 2008) (declining to address underdeveloped argument) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases for proposition that undeveloped arguments are waived)).

Third, to the extent the Commissioner is arguing that the conclusory format of the opinion, alone, allowed the ALJ to ignore it, the Commissioner is incorrect. *See Despain*, 926 F.3d at 1028 ("A conclusory report from a treating physician may still be entitled to controlling weight if it is accurate when viewed in the context of the medical record.") (citing *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003)). An ALJ may discredit a conclusory report, however, if it is "unsupported by the medical record." *Id.* (citing *Stormo v. Barnhart*, 377 F.3d 801, 805–06 (8th Cir. 2004)); *Crowley v. Saul*, No. 19-CV-0035-KEM, 2020 WL 3145693, at *8 (N.D. Iowa June 12, 2020) ("A treating physician's conclusory report may be entitled to controlling weight if supported by the medical evidence but may be discounted 'if it is unsupported by the medical record.'") (quoting *Despain*, 926 F.3d at 1028).

However, Claimant is also incorrect that reversal is always required when an ALJ fails to evaluate a medical opinion.

"The Eighth Circuit recognizes the doctrine of harmless-error in Social Security cases." *Brown v. Colvin*, 992 F. Supp. 2d 947, 953 (D. Neb. 2014), aff'd, 581 F. App'x 598 (8th Cir. 2014) (citing *Byes v. Astrue*, 678 F.3d 913, 917-18 (8th Cir. 2012)). An administrative finding will not be set aside based on an "arguable deficiency in opinion-writing technique" when it is unlikely it affected the outcome. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (quoting *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). The harmless error standard was applied where an ALJ did not adequately discuss the opinion of a physician. *See Parton v. Astrue*, No. 3:07-CV-063-J-TEM, 2008 WL 897094, at *5 (M.D. Fla. Mar. 31, 2008) ("[T]he Court does not find remand is warranted under the facts of this case because the ALJ's failure to address Plaintiff's treating physician's opinion was harmless error."); *but see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 750 (6th Cir. 2007) ("[I]nvoking the harmless-error exception here—where the ALJ entirely failed to address the primary treating source's presumptively supportable opinion—plainly risks having the exception swallow up the rule.").

*Trimble v. Saul*, No. 8:18CV162, 2020 WL 4436436, at *11 (D. Neb. Aug. 3, 2020), *rev'd and remanded on other grounds*, No. 20-3064, 2021 WL 4722023 (8th Cir. May 26, 2021); *Gatewood v. Colvin*, No. C15-0110, 2016 WL 4069879, at *8 (N.D. Iowa July 29, 2016) (stating that a harmless error argument may be proper when an ALJ fails to fully address and/or weigh one medical opinion in the record, but remand was required when the ALJ failed to fully address and/or weigh three treating medical source opinions). An error is not harmless when a claimant "provide[s] some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (internal quotations omitted); *Phillips v. Saul,* No. 1:19-CV-34-BD, 2020 WL 3451519, at *3 (E.D. Ark. June 24, 2020) (citing *Lucus*, 960 F.3d at 1069).

Claimant argues that the error was not harmless because the opinion corroborates her "reports of significant brain fog that would presumably preclude an ability to perform the skilled work relied on to deny Ms. Wise benefits at step five." (Doc. 16 at 15.) To

support her argument, Claimant cites, in  relevant part, her own hearing testimony, the VE's testimony, and the opinion.  (AR at 51, 56-57, and 461.)

I find that even had the ALJ considered the opinion, the ALJ would not have decided differently.  As stated above, the opinion is cursory and states, in relevant part, that Claimant "experiences significant brain fog, trouble focusing, etc.," which causes problems with memory and her ability to understand or reason.  (*Id.* at 462.)  Ms. Bries cites no support for the opinion—not her own treatment notes, conversations with Claimant, treatment notes from other physicians, or anecdotal evidence Claimant shared with Ms. Bries explaining how brain fog affected her life—and therefore the ALJ would likely have found the opinion unpersuasive.  A physician's opinion may be disregarded when it "consists of nothing more than vague, conclusory statements." *Koch v. Kijakazi*, 4 F.4th 656, 666 (8th Cir. 2021) (addressing the treating physician rule) (quoting *Kraus v. Saul*, 988 F.3d 1019, 1026 (8th Cir. 2021) (quoting *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)); *Despain*, 926 F.3d at 1028 (an ALJ may discredit a conclusory physician's report if it is unsupported by the medical record).  This is especially true given that in both March and October 2018, Ms. Bries stated that Claimant had no cognitive impairments.  (AR at 348, 460.)  The October statement was on the page facing the page where Ms. Bries stated that Claimant had brain fog.  (*Id.* at 460-61.)  Moreover, Ms. Bries's treatment notes do not support the opinion.  Ms. Bries noted only appropriate affect, judgment, insight, and clear mental status, with no mental or cognitive or memory defects.  (AR at 548 (Oriented x3; normal affect with no cognitive defects in memory or recognition), 560 (clear mental status; alert and oriented; normal mood and affect with clear mental status), 564 (appropriate affect, judgment and insight seem intact), 571 (same), 577 (same).)  As previously discussed, Claimant told Ms. Bries in both August and September 2018, one and two months before Ms. Bries wrote her October opinion, that she did not feel impaired or unable to work.  (*Id.* at 556, 558.)  A treating physician's

own inconsistency may . . . undermine [her] opinion and diminish or eliminate the weight given [the] opinions." *Toland*, 761 F.3d at 935-36 (ellipses in original). Here, inconsistencies in both Ms. Bries's treatment notes and her own opinions undermine her opinion that Claimant has brain fog that causes Claimant "trouble focusing, etc."

I find that had the ALJ considered the opinion, this factor would have weighed in favor of finding the opinion unpersuasive.

## ii. Consistency

"The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

Claimant argues that her own hearing testimony where she stated she had "fibro fog, I can't concentrate or focus or my, my short term memory's like really bad" (AR at 51); VE hearing testimony discussing the tasks of the nurse consultant job and stating that if someone were limited to simple, routine, repetitive tasks, they could not do the job (*Id.* at 56-57); and the ALJ's decision indicating that the nurse consultant job has a specific vocational preparation level of 7 (*Id.* at 21) all support a finding that the ALJ committed reversable error by failing to address the opinion.

Claimant is correct that the VE testified that the tasks of a nurse consultant, the job the ALJ found Claimant able to perform with her RFC, could not be performed by someone who was limited to performing simple, routine, repetitive tasks. (*Id.* at 56-57.) However, Claimant has cited no evidence other than the opinion and her own testimony as proof she is unable to perform work at SPV 7, much less that she is limited to performing only simple routine tasks. (*Id.* at 51.) It is not the Court's place to reweigh the evidence or to find evidence in the record to support Claimant's arguments. *See Vester*, 416 F.3d at 889 (courts do not reweigh evidence); *ASARCO, LLC v. Union Pac. R.R. Co.*, 762 F.3d 744, 753 (8th Cir. 2014) ("Judges are not like pigs, hunting

for truffles buried in briefs or the record.") (internal quotation marks omitted).  It was Claimant's burden to present evidence that the ALJ would have decided the case differently had she considered the opinion, *see Byes*, 687 F.3d at 917, and Claimant has not satisfied this burden.

In an abundance of caution, I will assume that Claimant meant to have the treatment notes she cited in support of Ms. Bries's physical opinions also apply to the opinion, although Claimant does not so state in her brief.   When Claimant presented to Dr. Singla for her neurology consult, she complained of decreased concentration and sleep disturbance.  (AR at 331.)  However, Dr. Singla made no mention of this in his own treatment notes and his treatment plan does not mention mental/cognitive issues. (*Id.* at 334.)  Likewise, in her new patient consultation with Dr. Palma in April 2018, Claimant complained of poor memory and mental haziness (*Id.* at 366), but Dr. Palma noted no memory loss in his treatment notes and stated that Claimant was alert and oriented x3. (*Id.* at 336-37.)  In May 2018, Dr. Palma again noted no memory loss.  (*Id.* at 396.)  In July 2018, Claimant presented to Dr. Brian E. O'Shaughnessy for evaluation of paresthesias and cognitive complaints.  (*Id.* at 423.) Claimant scored 29/30 on her mental status examination.  (*Id.* at 425.)  Because Claimant exhibited "only slight problems on her mental status testing," Dr. O'Shaughnessy started the process for neuropsychological testing, assumedly to determine the source of Claimant's claimed cognitive impairments.  (*Id.* at 426.)  There is no indication in the record this testing was ever performed.  Moreover, although Claimant testified that she is unable to add or subtract, she and her fiancé both told SSA in their Function Reports that Claimant is able to pay bills, count change, and handle checking and savings accounts.  (*Id.* at 192, 203.) Claimant also reads daily and drives.  (*Id.* at 49, 193, 203.)  Finally, although not dispositive, Claimant did not claim she had a mental disability when she applied for disability benefits.  *See Richmond v. Shalala*, 23 F.3d 1441, 1444 (8th Cir. 1994)

(considering that claimant had not claimed mental impairments in application along with other evidence when declining to remand based on ALJ's alleged failure to properly evaluate mental impairments); *Knox v. Colvin*, 637 F. App'x 956, 960 (8th Cir. 2016) (same).

Thus, while Claimant's evidence shows that Claimant told two physicians she had memory problems, the physicians did not take any action, make any individual treatment notes, or devise treatment plans addressing Claimant's memory issues. Claimant points the Court to no evidence to the contrary. The physician tasked with evaluating Claimant's cognitive complaints gave her a score of 29/30 on her mental status examination. In addition, while Claimant testified that she does not always feel like driving, she did not say she gets lost or confused when she does so (*Id.* at 51) or that she was unable to follow the plots of books that she reads.

Accordingly, I find that had the ALJ considered the opinion, this factor would have weighed in favor of finding the opinion unpersuasive.

### d.    *Conclusion*

Claimant has not provided "some indication that the ALJ would have decided differently" had she separately analyzed the opinion, which distinguishes this case from *Phillips*, 2020 WL 3451519, upon which Claimant relies. (Doc. 18 at 5.) In *Phillips*, the ALJ applied the wrong standards, assigning weight to opinions rather than persuasiveness, and failed to explain why another opinion was not persuasive, providing only boilerplate reasons. 2020 WL 3451519 at *2-3. The claimant argued that had the ALJ properly evaluated the opinions and found them persuasive, he would have found her disabled because the VE testified that the claimant could not perform jobs while taking the number of breaks her opinion writer stated she required during the workday. *Id.* at *3. This is not the situation with the case at bar in which the evidence supports the decision the ALJ originally reached. Therefore, I find that any error on the part of the

ALJ with respect to her consideration of the opinion was harmless and does not require reversal or remand. *See Trimble*, 2020 WL 4436436, at *11; *Gatewood*, 2016 WL 4069879, at *8 (opining that a harmless error argument may be proper when an ALJ fails to fully address and/or weigh one medical opinion in the record).

### 3. Conclusion

I recommend the District Court affirm the ALJ's decision on this issue.

## E. Whether the ALJ Fully and Fairly Developed the Record

Claimant argues that the ALJ did not fully and fairly develop the record regarding her impairments. Claimant argues that the ALJ should have obtained medical expert testimony regarding Claimant's limitations. (Doc. 16 at 17.)

> If the ALJ thought Ms. Bries' treating opinions and the opinions of the agency medical consultants were not helpful to craft Mr. [sic] Wiese's RFC, the ALJ should have ordered a consultative examination or at least called a medical expert to testify on Ms. Wiese's mental and physical limitations given her combination of impairments. *See Lauer v. Apfel*, 245 F.3d 700, 706 (8th Cir. 2001); *Noerper v. Saul*, 964 F.3d 738, 744-47 (8th Cir. 2020). Besides Ms. Bries' opinions concerning Ms. Wiese's cognitive limitations that the ALJ did not address (see TR 461-62), there are no opinions addressing of [sic] Ms. Wiese's fibromyalgia-related cognitive limitations. The ALJ should have further developed the record concerning how Ms. Wiese's "fibro fog" and fatigue and concentration issues impacted her ability to perform the mentally demanding skilled work the ALJ found she could perform.

(*Id.*) Therefore, according to Claimant remand is required for further record development. (*Id.*)

A "social security hearing is a non-adversarial hearing, and the ALJ has a duty to fully develop the record." *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). The ALJ bears this responsibility "independent of the claimant's burden to press [her] case" and it extends

44

to cases where claimants are represented by counsel at the administrative hearing. *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004). However, the Eighth Circuit has held:

> Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment. *Snead,* 360 F.3d at 836; 20 C.F.R. § 404.1512. Past this point, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala,* 22 F.3d 186, 189 (8th Cir. 1994).

*Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). The inquiry is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). Absent unfairness or prejudice, remand is not required. *Id.* (citing *Phelan v. Bowen*, 846 F.2d 478, 481 (8th Cir. 1988)). In addition, the ALJ must determine a claimant's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (alteration in original) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

"Because [a] claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* (citing *Myers*, 721 F.3d at 526-27) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same). "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Id.* (alteration in original) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)).

Although Claimant bears the burden to "provid[e] the evidence [the ALJ] will use to make a finding about [Claimant's] residual functional capacity," the ALJ is "responsible for developing the claimant's complete medical history." 20 C.F.R. § 404.1545(a)(3) (2019). "The ALJ's obligation to develop the record 'is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Coleman v. Colvin*, No. 13cv1004 EJM, 2013 WL 4069523, at *2 (N.D. Iowa Aug. 12, 2013) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v . Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p, 1996 WL 374187, at *1.

In the case at bar, Claimant's neck and back issues are well-documented and are accounted for in the RFC. No further record development is necessary. In fact, as previously discussed, the ALJ found that Claimant required a sedentary RFC, as opposed to the light or medium RFC proposed by the state agency reviewing physicians, based on Claimant's testimony and the ALJ's review of the record. (AR at 19.)

Claimant's mental issues are not as well-documented, not because physicians did not assess Claimant's mental health, but because even when Claimant told physicians she felt confused, mental health examinations did not reveal limitations. Even Dr. Bries, whose opinion was discussed above, noted only normal mental status findings in her treatment notes. Moreover, Dr. O'Shaughnessy, whom Claimant saw specifically for cognitive complaints, gave Claimant a score of 29/30 on her mental status examination.

In addition, Claimant did not claim she had a mental impairment when she applied for disability benefits and Claimant's attorney stated at the hearing that the record was complete. (AR at 36, 178.) Claimant had the burden to prove she is disabled and has not provided any evidence that she is. *Moore*, 572 F.3d at 523.

Claimant was not treated unfairly or prejudiced by the ALJ's decisions. The evidence in the record is not ambiguous or inadequate to allow the ALJ to properly evaluate the evidence. *Coleman*, 2013 WL 4069523, at *2. Based on the record before the ALJ, she was "permitted to issue a decision without obtaining additional medical evidence" because "other evidence in the record provide[d] a sufficient basis for the ALJ's decision." *Kamann*, 721 F.3d at 950 (quotation omitted). Here, the ALJ cited treatment notes to support her decision. (AR at 17-20.) In this way, the instant case can be distinguished from *Lauer v. Apfel*, in which the Eighth Circuit found it was "unclear as to the medical basis, if any, for [the ALJ's] assessment of the degree to which Mr. Lauer's mental impairments affected his RFC." 245 F.3d 700, 705 (8th Cir. 2001). *Hutsell v. Massanari* can also be distinguished from the instant case because the treatment notes unambiguously support the ALJ's decision. 259 F.3d 707, 712 (8th Cir. 2001) (remand required when medical opinions inconclusive and no medical opinion supported ALJ's decision).

Claimant cites *Nevland v. Apfel,* 204 F.3d 853, 857 (8th Cir. 2000) for the proposition that a claimant's RFC must ordinarily be supported by a treating or examining source opinion to be supported by substantial evidence. (Doc. 16 at 16.) *Nevland* is still good law and on first blush it appears to be at odds with *Hensley*, 829 F.3d at 932. However, the two cases can be harmonized. The question in a situation like the one at bar where the ALJ found the opinion evidence generally unpersuasive and relied instead on treatment notes to support her decision, becomes whether the "other medical evidence of record . . . might fill the gap by clearly establishing a claimant's RFC to do other

work, and to function in the workplace." *Barrows v. Colvin*, No. C 13-4087-MWB, 2015 WL 1510159, at *3 (N.D. Iowa Mar. 31, 2015) (quoting then-Magistrate Judge Strand, who was citing *Hattig v. Colvin*, No. C. 12–4092, 2013 WL 6511866, *11 (N.D. Iowa Dec. 12, 2013)). As discussed above, the evidence supported the ALJ's decision on Claimant's physical impairments and no further development of the record is required. *See Hacker*, 459 F.3d at 936 (the ALJ's decision is not outside the acceptable zone of choice because the court might have reached a different decision on the same evidence). The evidence also shows that no further development of the record is required regarding Claimant's mental impairments. The standard for further record development is not satisfied. Despite Claimant's claims, the evidence overwhelmingly supports a finding that Claimant does not have serious mental impairments. As discussed above, treatment notes and Claimant's and her fiancé's own description of her abilities show that the record supported a finding that Claimant did not have mental impairments. See *Perks*, 687 F.3d at 1092 ("Medical records, physician observations, and the claimant's subjective statements about his capabilities may be used to support the RFC.") Therefore, the ALJ's obligation to further develop the record on this issue was not triggered because the evidence is not ambiguous or inadequate. Claimant not only failed to establish that she had a mental impairment that prevents her from performing the job of nurse counselor, she also failed to establish there was an ambiguity on the issue. *See Coleman*, 2013 WL 4069523, at *2.

I recommend the District Court affirm the ALJ's decision on this issue.

## IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm in part and reverse and remand in part** the decision of the ALJ. I recommend that the District Court **reverse and remand** the case for the ALJ to obtain testimony from a vocational expert regarding whether the job of nurse consultant or other jobs are available

48

in the national economy that Claimant can perform with her RFC and **affirm** the ALJ's decision in all other respects as discussed above.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 15th day of February, 2022.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa